UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY DENNIS,<br><br>Plaintiff<br><br>v.<br><br>C.O. STROUSE, *et al.*<br><br>Defendants. | CIVIL ACTION NO. 3:25-cv-01871<br><br>(MEHALCHICK, J.) |

## MEMORANDUM

Before the Court are Defendants' motion to partially dismiss the complaint and an amended motion to partially dismiss the complaint. (Doc. 11; Doc. 12). Because Defendants have filed an amended motion, the Court will deny the initial motion as moot. For the following reasons, the Court will grant the amended motion to partially dismiss the complaint in part and deny it in part.

## I. Background and Procedural History

Plaintiff Jeffrey Dennis ("Dennis"), an inmate currently housed at the State Correctional Intuition Frackville ("SCI-Frackville") initiated this action in October of 2025 by filing a complaint naming the following five Defendants employed at SCI-Frackville: (1) Correctional Officer Strouse ("Strouse"); (2) Correctional Officer Berlino ("Bellino")[1]; (3)

[1] Defendants corrected the spelling of "Berlino" to "Bellino" in their brief in support. (Doc. 13, at 1).

Lieutenant Raimer ("Ramer")[2]; (4) Lieutenant Kraynak ("Kraynak"); and (5) Lieutenant Pinkey ("Pinkey"). (Doc. 1).

Dennis alleges that he was previously housed at SCI-Houtzdale when he initiated civil rights litigation by filing a complaint under 42 U.S.C. § 1983. (Doc. 1, at 5). Dennis alleges that he was transferred to SCI-Smithfield in 2020 and then transferred to SCI-Frackville in 2021 and all the while Dennis continued his civil rights lawsuit. (Doc. 1, at 5). Dennis alleges that his lawsuit was well known amongst the staff at SCI-Frackville. (Doc. 1, at 6). Dennis states that in June or July of 2023, the Department of Corrections ("DOC") requested mediation and settlement discussions in his lawsuit, and his first mediation was scheduled to take place on October 28, 2023 but was later rescheduled to November 2, 2023. (Doc. 1, at 6).

Dennis alleges that on October 3, 2023, a large search of the entire A-block was conducted by the Crises Emergency Response Team ("CERT") at SCI-Frackville. (Doc. 1, at 6). Dennis states that Defendant Ramer was the on-duty supervisor during the search and Defendants Strouse and Bellino were the officers deployed to search Dennis' cell, which was No. 25 on A-B block. (Doc. 1, at 6). Dennis alleges that the search was done in a secretive manner in the early hours while inmates were still asleep and the lights were out, which was not the normal parameters for a search. (Doc. 1, at 7). Dennis states that Defendants Strouse and Bellino rushed into his cell "with violent overwhelming force," removed the covers from his person and screamed, "don't f**king move or we'll f**k you up," while shinning a light in his eyes (Doc. 1, at 7). Dennis alleges that he woke up, was startled, and attempted to sit

---

[2] Defendants corrected the spelling of "Raimer" to "Ramer" in their brief in support. (Doc. 13, at 1).

up. (Doc. 1, at 7). Dennis states that Defendants Strouse and Bellino then immediately assaulted him in "a completely unprovoked attack." (Doc. 1, at 7). Dennis alleges that he covered up in a defensive posture and felt more blows and hands grab him around his neck, arms, and legs as he was "violently snatched out of his bed and slammed violently to the floor." (Doc. 1, at 7). Dennis alleges that while he was then on the floor in a defensive posture, Defendants Strouse and Bellino continued to strike him with closed fists as he screamed out in pain. (Doc. 1, at 7–8). Dennis alleges that several blows were around his genitalia, his back, and his neck. (Doc. 1, at 8). Dennis states that the strikes made him lose consciousness. (Doc. 1, at 8). Dennis alleges that Defendants Strouse and Bellino placed handcuffs tightly on his wrists cutting off circulation to his hands and causing extreme pain. (Doc. 1, at 8). Dennis states that he and his cellmate complained of Defendants' actions and were told to "shut the f**k up." (Doc. 1, at 8).

Dennis states that he and his cellmate were left out on the tier with their hands cuffed tightly behind their back for several hours without the opportunity to use the toilet. (Doc. 1, at 8). When Dennis was allowed to use the toilet, Defendants Strouse, Bellino and Ramer were present while laughing and mocking Dennis about the assault that had just occurred. (Doc. 1, at 8-9). Dennis alleges that he struggled to relieve himself and Defendant Ramer then ordered him to stand up and cuffed him again too tightly "and with excessive force." (Doc. 1, at 9). Dennis complained about how tight the cuffs were and Defendant Ramer stated that he would tighten them if Dennis continued to complain. (Doc. 1, at 9). Dennis reported that assault to Defendant Ramer, told him he was in severe pain, and asked to be seen by medical. (Doc. 1, at 9). Dennis alleges that Defendant Ramer responded with "you should shut your F**king mouth if you knew what was good for you because if we have to file paperwork, we'll

take you straight to the RHU and the difference between any paperwork we file, and any you file, is our paperwork will get you a new case and a new prison sentence." (Doc. 1, at 9).

Dennis alleges that during the search of his cell, Defendants Strouse and Bellino broke his footlocker lid, broke his television, threw his legal work and clean laundry on the floor, walked over his legal work and clean launder, dumped his laundry detergent down the toilet, and confiscated his wash tub, keyboard, and footlocker without a confiscation slip. (Doc. 1, at 10). Dennis states that during the search, he raised his concern for how his property was being treated to which Defendants made multiple comments about him filing grievances. (Doc. 1, at 10). Dennis states that his property was held in the security department for almost a week before being returned. (Doc. 1, at 10). Dennis alleges that this incident occurred because he was scheduled to discuss settlement of his lawsuit a few weeks after the events took place. (Doc. 1, at 10).

Dennis alleges that he gathered multiple statements of witnesses and filed a grievance on October 13, 2023 and submitted a sick call to be seen for his injuries. (Doc. 1, at 11). Dennis was seen by physician O'Brien who "glossed" over his injuries and prescribed Dennis Motrin and an antibiotic for a possible urinary tract infection and pain. (Doc. 1, at 11). A few days after filing the grievance, Dennis was called to the security department and seen by Defendant Kraynak. (Doc. 1, at 11). Dennis requested that the camera footage of the tier be preserved and Defendant Kraynak stated "well that's all I needed to say to you, we're done here." (Doc. 1, at 11). Dennis states that Defendant Kraynak did not take any pictures of Dennis' visible injuries nor ask for any details of the incident. (Doc. 1, at 12). Dennis' grievance was referred to be investigated and several extensions were granted. (Doc. 1, at 12). Dennis alleges that an investigation was not started until April of 2024 when Defendant

Pinkey called him into the security department and stated that he found the file on his desk and started the investigation. (Doc. 1, at 13). Dennis alleges that he attempted to exhaust his grievance, but each level of appeal was denied because there was no initial determination. (Doc. 1, at 13–14). All the while, his settlement negotiations continued without success in his lawsuit. (Doc. 1, at 13–14).

Next, Dennis alleges that on May 24, 2024, he was scheduled to go on an outside hospital visit and Defendant Strouse was assigned to his detail despite an active abuse allegation against him. (Doc. 1, at 14–15). Dennis alleges that Defendant Strouse was the individual assigned to have the handgun in his possession and Dennis spent the whole trip in fear thinking Strouse was going to shoot him. (Doc. 1, at 14–15). Dennis states that he settled his case under "extreme duress" for a much lower sum than he was comfortable with the following week stating that he was intimidated into the decision. (Doc. 1, at 15). Dennis alleges that the timing of the settlement negotiations, the ongoing investigation, and Defendant Strouse being assigned to his detail were all orchestrated events to make Dennis capitulate to a lower sum in his negotiations with the DOC. (Doc. 1, at 15).

Dennis alleges that that in July of 2024, he was escorted to the property/intake department and ordered by Defendant Kraynak to strip for a search. (Doc. 1, at 15). Dennis alleges that Defendant Kraynak informed him that this had nothing to do with Dennis but could not tell him more. (Doc. 1, at 15–16). Defendant Pinkey arrived with an unknown individual from the Bureau of Intelligence and Investigation stating that his inmate was involved with in an inappropriate relationship with a female employee at the institution and wanted to know if Dennis had any information. (Doc. 1, at 16). Dennis stated that he had no knowledge of this, and he was told that someone would be coming from Bureau of

Intelligence and Investigation shortly to speak with him about his abuse allegation. (Doc. 1, at 16). Dennis alleges that his property was confiscated without a confiscation slip and he was held for a few days to be searched and removed from his block to another block. (Doc. 1, at 16). Dennis states that when his property was returned to him, he was missing several items including legal work, books, bowls, commissary, property receipts, and pens. (Doc. 1, at 16). Dennis states that among the missing legal work was his Federal Habeas Corpus petition challenging his conviction and supporting documentation. (Doc. 1, at 17). Dennis filed a grievance about his missing property which was denied because he did not supply property receipts, despite stating in the grievance that these items were confiscated to prevent him from filing a proper grievance. (Doc. 1, at 16–17). Dennis states that he appealed this denial and when he received copies of the documentation he needed, he refiled the grievance. (Doc. 1, at 17). The refiled grievance was denied because his appeal was pending. (Doc. 1, at 17). Dennis alleges that this was done to deny him administrative remedies. (Doc. 1, at 17). Dennis alleges that he is incurring costs associated with replacing the documents associated with his habeas corpus action. (Doc. 1, at 17).

Dennis alleges that on November 21, 2024, Dennis' cell was targeted for a search by Defendant Bellino for two hours during a block wide search. (Doc. 1, at 18). He alleges that his property was ransacked and mixed up and his evidence associated with the October 3, 2023 assault was missing. (Doc. 1, at 18). Dennis filed a grievance regarding his on December 6, 2024 but did not receive the pink carbon copy of his grievance, so he filed a second grievance on December 18, 2024 with a goldenrod copy of his initial grievance. (Doc. 1, at 18). Dennis alleges that the December 18, 2024 grievance was denied as untimely. (Doc. 1, at 18).

Based on the above alleged facts, Dennis brings an excessive use of force claim under the Eighth Amendment against Defendants Strouse, Bellino, and Ramer, an equal protection claim under the Fourteenth Amendment against all Defendants, a deliberate indifference to a serious medical need claim under the Eighth Amendment against Defendant Ramer, a retaliation claim under the First Amendment against all Defendants, a federal civil conspiracy and failure to prevent conspiracy claim against all Defendants, an assault and battery claim against Defendants Strouse and Bellino, an intentional infliction of emotional distress claim against all Defendants, and generalized Eighth and Fourteenth Amendment claims against all Defendants. (Doc. 1, at 3–4).

## II. Discussion

### A. Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219–20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also* *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation

omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233–234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With these standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

B. CLAIMS OUTSIDE OCTOBER 3, 2023 CELL SEARCH

Defendants seek the dismissal of all claims not stemming from the October 3, 2023 cell search arguing that the events alleged following the cell search were improperly joined. (Doc. 13, at 12–14). Defendants cite Federal Rule of Civil Procedure 20 in arguing that Plaintiff had impermissibly joined multiple defendants in a single case. (Doc. 13, at 12). Federal Rule of Civil Procedure 20 allow defendants to be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alterative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Courts have broad discretion in applying Fed. R. Civ. P. 20 to reduce inconvenience, delay, and added expense to the parties and to the court, and to promote judicial economy. *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009). Here, Dennis has clearly asserted that all the events we part of an orchestrated effort to pressure him into settling his previous lawsuit against the DOC. (Doc. 1, at 15). Therefore, liberally construing the complaint, the Court concludes that all the alleged events are part of the same transaction and occurrence, and Defendants' attempts to limit the claims to the events of October 3, 2023 will be denied.

C. EQUAL PROTECTION

Dennis raises an equal protection claim under the Fourteenth Amendment against all Defendants. (Doc. 1, at 4–5). The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that (1) he is a member

of a protected class, and (2) he was treated differently from similarly situated inmates. *City of Cleburne, Tex.*, 473 U.S. at 439.

Dennis alleges that he is a member of a protected class as an inmate. (Doc. 1, at 20). However, it is well settled that prisoners do not qualify as a suspect class for equal protection claims. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (*en banc*) (explaining that neither prisoners nor indigents are suspect classes for Fourteenth Amendment equal protection purposes). Furthermore, nothing in the claim alleges that he was treated differently from similarly situated inmates. Therefore, Dennis' equal protection claims will be dismissed without prejudice.

D. Eighth Amendment Claim Against Defendant Ramer

Dennis alleges Defendant Ramer was deliberately indifferent to a serious medical need in violation of the Eighth Amendment when he denied Dennis medical care following the October 3, 2023 use of force. (Doc. 1, at 19). Prison officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs. *See Estelle*, 429 U.S. at 104–05. To sustain a constitutional claim under the Eighth Amendment for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he or she

"knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Dennis alleges that Defendant Ramer was aware of the use of force, witnessed his difficulty urinating, and threatened placement in the RHU when he asked to see medical. (Doc. 1, at 8–9). Defendants argue that because Dennis received medical care following the October 3, 2023 use of force, Dennis' claim is a mere disagreement with the medical care received. (Doc. 13, at 20). However, Dennis clearly claims that that care was received following the filing of a sick call slip on October 13, 2023, and not in response to Dennis' request to Defendant Ramer. (Doc. 1, at 11). Defendants' argument that care provided ten days following his request for care is not sufficient to undermine the Eighth Amendment claims set forth in the complaint. Therefore, Defendants' motion will be denied and the Eighth Amendment claim will be allowed to proceed.

E. CONSPIARCY CLAIMS

Dennis brings claims of conspiracy under Sections 1985 and 1986 against all Defendants. (Doc. 1). To state a claim for conspiracy, a plaintiff must do more than recite talismanic phrases like "conspire" and "act in concert." *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that, to state a civil conspiracy claim, a plaintiff must demonstrate that defendants "somehow reached an understanding to deny [the plaintiff] his rights" (alteration in original)); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (citing *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984), *aff'd,* 769 F.2d 152 (3d Cir. 1985) ("It is a longstanding rule in the Third Circuit that a mere general allegation ... [or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]." (citing

*Black & Yates v. Mahogany Ass'n*, 129 F.2d 227, 231–32 (3d Cir. 1941), *on reh'g sub nom. Black & Yates, Inc. v. Mahogany Ass'n, Inc.*, No. 7561, 1942 WL 53456 (3d Cir. June 10, 1942)))); *Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (nonprecedential) (finding that "conclusory allegation" that defendants "conspired" against him fails to state a claim for civil conspiracy).

In support of his allegations of conspiracy, Dennis alleges that they "coordinated and had a meeting of the minds to commit assault/battery and cause intentional infliction of emotional distress to Dennis as well as terror during this shake down, going into his upcoming settlement proceedings with the D.O.C." (Dc. 1, at 20). He further alleges that "there was a meeting of the minds of these defendants to not properly follow their own policy and procedure," and that "defendant's had a meeting of the minds to place one of plaintiff's attackers (defendant Strouse, while there was an active investigation into), on the detail which Dennis, on May 24th, 2024." (Doc. 1, at 21–22). He states that this was a deliberate act on the part of "these defendant's" to assign Defendant Srouse on the detail that day and against points to a "meeting of the minds that this would be done to instill fear, in order to influence his eventual settlement agreement." (Doc. 1, at 22).

Dennis' conclusory assertion of a "meeting of the minds" to violate his rights is plainly insufficient to plausibly state a federal conspiracy claim. Since Section 1986 claims for a failure to prevent conspiracy are derivative of conspiracy, the Court will likewise dismiss these claims without prejudice. Accordingly, any federal conspiracy claim and failure to prevent conspiracy claim Dennis is attempting to assert will be dismissed for failure to state a claim upon which relief may be granted.

F. Retaliation Claims

Dennis raises retaliation claims against all Defendants premised on the overarching narrative that all Defendants' action were an attempt to influence his willingness to settle the prior lawsuit against the DOC. (Doc. 1). It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015). A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

Dennis' complaint fails to establish the third factor of causation. Dennis alleges that the undying conduct of the lawsuit occurred at SCI-Houtzdale. (Doc. 1, at 5). Plaintiff does not allege that any of the Defendants in this action were the subject of the lawsuit he initiated while housed at SCI-Houtzdale. This Court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity. *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, No. 3:07-CV-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd,* 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, No. CIV.A. 07-2301, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Dennis

for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Since no Defendants in this action were the subject of the lawsuit from SCI-Houtzdale, the claims of retaliation for pursuing the lawsuit at SCI-Houtzdale will be dismissed.

However, the Court finds that Defendants Strouse and Bellino were the subject of a grievance filed following the October 3, 2023 use of force. Furthermore, the alleged actions of Defendant Strouse on May 24, 2024 and Defendant Bellino on November 21, 2024 were not addressed in Defendants' motion to dismiss. Therefore, any retaliation claim against these two Defendants for their conduct on the respective dates will be allowed to proceed to discovery.

G. State Tort Claims

Defendants allege that Defendants Kraynak, Pinkey, and Ramer were entitled to sovereign immunity as to the state tort claims of intentional infliction of emotional distress, assault, and battery. (Doc. 13, at 16–17). In his complaint, Dennis does not indicate whether he is bringing the state tort claims against these Defendants in their official or individual capacities. (Doc. 1). However, the Third Circuit requires a nonspecific complaint such as this to be liberally construed as if the claims were brought against Defendants in their individual and official capacities. *Gregory v. Chehi*, 843 F.2d 111, 119–20 (3d Cir. 1988) ("[R]esolving doubts in favor of plaintiff, we will assume he is suing the individuals in their personal capacities as well."). Therefore, the Court will proceed with an Eleventh Amendment analysis.

Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n.55 (1978). In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment. *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291, 318 (3d Cir. 2013). Because Defendants are state officials, in their official capacity as employees of the DOC, the claims against them in their official capacity for damages are really claims against the Commonwealth and, as such, are barred by the Eleventh Amendment.

A state, however, may waive its Eleventh Amendment immunity by consenting to suit, and Congress may abrogate states' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The Commonwealth of Pennsylvania has not waived its Eleventh Amendment sovereign immunity, *see* 42 P.C.S.A.§ 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Although the Commonwealth of Pennsylvania has expressly reaffirmed its immunity from this type of suit in federal court, the state has waived sovereign immunity in nine limited circumstances. These exceptions to the general grant of immunity to the Commonwealth and its employees are for negligent acts involving: (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales;

(8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b). The exceptions to the Commonwealth's sovereign immunity must be strictly construed because the legislature waived immunity only in specific situations. *Moser v. Heistand*, 545 Pa. 554 (1996) (citing *Snyder v. Harmon*, 522 Pa. 424 (1989)). None of these exceptions apply here. Accordingly, the Eleventh Amendment bars Dennis from raising claims against these Defendants in their official capacities. The state tort law claims against them in their individual capacity will be allowed to proceed to discovery.

H. DEFENDANTS PINKEY AND KRAYNAK

Defendants argue that claims against Pinkey and Kraynak should be dismissed based on a lack of personal involvement. (Doc. 13, at 14–15). The remaining claims against Defendants Pinkey and Kraynak are generalized Eighth Amendment claims considering all Fourteenth Amendment, conspiracy, and state tort claims will be dismissed. *See supra*.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (*citations omitted*). Dennis's generalized Eighth Amendment claims at the end of an enumerated cause of action litany without alleged facts that demonstrate personal involvement by Defendants' Pinkey and Kraynak in any cruel and unusual punishment claims, the generalized Eighth Amendment claim will be dismissed.

However, the Court notes that Dennis raised a First Amendment denial of access to the court claim against Defendant Kraynak, which was not addressed in Defendants' motion to dismiss. (Doc. 1, at 24). Therefore, this claim will proceed to discovery.

## III. CONCLUSION

For the above stated reasons, the Court will grant the motion to dismiss in part and deny the motion in part. The Court will dismiss the following claims without prejudice: equal protection claims; 42 U.S.C. § 1985 claims; 42 U.S.C. § 1986 claims; and the Eighth Amendment claims against Defendants Pinkey and Kraynak. The Court will dismiss all claims of retaliation associated with the SCI-Houtzdale lawsuit and all claims of intentional infliction of emotional distress against Defendants Kraynak, Pinkey, and Ramer in their official capacity with prejudice. The Court will not dismiss the deliberate indifference claim against Defendant Ramer, the retaliation claims against Defendants Strouse and Bellino based on the grievance filed following the October 3, 2023 use of force, the intentional infliction of emotional distress claims raised against Defendants Kraynak, Pinkey, and Ramer in their individual capacity, and the access to court claim against Defendant Kraynak. Defendants did not challenge the Eighth Amendment excessive force claim and state law tort claims asserted against Defendants Strouse and Bellino. (Doc. 13, at 1–2).

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**